EXHIBIT S to DEF'S MSJ

Westlaw.

Page 1

881 F.2d 309, 50 Fair Empl.Prac.Cas. (BNA) 601, 51 Empl. Prac. Dec. P 39,208
**(Cite as: 881 F.2d 309)**

United States Court of Appeals,
Sixth Circuit.
Josephine GAGNÉ, Plaintiff-Appellant,
v.
NORTHWESTERN NATIONAL INSURANCE
COMPANY, Defendant-Appellee.
**No. 88-3949.**

Argued May 16, 1989.
Decided Aug. 1, 1989.

Terminated claims representative brought action against insurer which had employed her, alleging she was terminated from her employment because of her age in violation of Age **Discrimination** in Employment Act and Ohio age **discrimination** statute, and alleging pendent state law claims sounding in breach of implied employment contract and tortious infliction of emotional distress. The United States District Court for the Southern District of Ohio, James L. Graham, J., granted summary judgment for insurer, and representative appealed. The Court of Appeals, Krupansky, Circuit Judge, held that: (1) solitary remark by immediate supervisor, that he "needed younger blood," was not sufficient to create issue of material fact on age **discrimination** claims or to shift burden of proof to employer to prove that employment termination decision was not result of impermissible discriminatory action; (2) employee handbook section detailing 15 specific situations that might warrant immediate discharge without warning did not create implied contractual provision under Ohio law that was breached by terminating representative for poor performance; and (3) representative had failed to allege mental disturbance of sufficient severity to state cause of action under Ohio law for negligent or intentional infliction of emotional distress.

Affirmed.

West Headnotes

[1] Civil Rights 78 ⟺1201

78 Civil Rights
   78II Employment Practices
      78k1199 Age **Discrimination**
         78k1201 k. Practices Prohibited or Required in General; Elements. Most Cited Cases
  (Formerly 78k168.1, 78k168, 78k9.15)

Civil Rights 78 ⟺1551

78 Civil Rights
   78IV Remedies Under Federal Employment **Discrimination** Statutes
      78k1543 Weight and Sufficiency of Evidence
         78k1551 k. Age **Discrimination**. Most Cited Cases
  (Formerly 78k388, 78k44(6))
Elements of prima facie case of age **discrimination** require that charging party demonstrate that: she was member of protected class, i.e., that she was between 40 and 65 years of age; that she was subjected to adverse employment action; that she was qualified for particular position; and that she was replaced by person not a member of the protected class. Age **Discrimination** in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.; Ohio R.C. § 4101.17 et seq.

[2] Civil Rights 78 ⟺1539

78 Civil Rights
   78IV Remedies Under Federal Employment **Discrimination** Statutes
      78k1534 Presumptions, Inferences, and Burden of Proof
         78k1539 k. Age **Discrimination**. Most Cited Cases
  (Formerly 78k380, 78k43)
Once claims representative introduced sufficient evidence to prove that she was within class protected from age **discrimination**, that she had been subjected to adverse employment action, and that she was replaced by younger person, and employ-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

881 F.2d 309, 50 Fair Empl.Prac.Cas. (BNA) 601, 51 Empl. Prac. Dec. P 39,208
**(Cite as: 881 F.2d 309)**

ing insurer set forth evidence that basis for employment termination was that representative was not qualified for her position, representative then assumed burden of persuasion of demonstrating that proffered reason was not true reason for employment decision, requiring her to produce evidence that "but for" age factor she would not have been terminated. Age **Discrimination** in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.; Ohio R.C. § 4101.17 et seq.

**[3] Federal Civil Procedure** 170A ⚿2497.1

170A Federal Civil Procedure
   170AXVII Judgment
      170AXVII(C) Summary Judgment
         170AXVII(C)2 Particular Cases
           170Ak2497 Employees and Employment **Discrimination**, Actions Involving
              170Ak2497.1 k. In General. Most Cited Cases
   (Formerly 170Ak2497)
Solitary remark by immediate supervisor, that he "needed younger blood," was not sufficient to create material factual issue as to whether claims representative's discharge was motivated by age, for purposes of age **discrimination** action. Age **Discrimination** in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.; Ohio R.C. § 4101.17 et seq.

**[4] Federal Civil Procedure** 170A ⚿2539

170A Federal Civil Procedure
   170AXVII Judgment
      170AXVII(C) Summary Judgment
         170AXVII(C)3 Proceedings
           170Ak2536 Affidavits
              170Ak2539 k. Sufficiency of Showing. Most Cited Cases
Terminated claims representative's affidavit stating that her immediate supervisor made remark that he "needed younger blood" on several occasions did not create material factual issue as to whether discharge was motivated by age, for purposes of age **discrimination** action, where representative had testified in deposition that supervisor made the statement only once; party could not create factual issue by filing affidavit after motion for summary judgment had been made in contradiction to earlier deposition testimony. Age **Discrimination** in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.; Ohio R.C. § 4101.17 et seq.

**[5] Civil Rights** 78 ⚿1539

78 Civil Rights
   78IV Remedies Under Federal Employment **Discrimination** Statutes
      78k1534 Presumptions, Inferences, and Burden of Proof
         78k1539 k. Age **Discrimination**. Most Cited Cases
   (Formerly 78k380, 78k43)
**Single remark** of immediate supervisor, that he "needed younger blood," was not sufficient to shift burden of proof to employer insurer to prove that termination of claims representative was not result of impermissible discriminatory action based on age; that standard applied only in limited circumstances in which employee produced direct evidence that adverse employment decision at issue was result of "mixed motives" on part of employer with impermissible discriminatory animus being substantial motivation for action. Age **Discrimination** in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.; Ohio R.C. § 4101.17 et seq.

**[6] Federal Civil Procedure** 170A ⚿2539

170A Federal Civil Procedure
   170AXVII Judgment
      170AXVII(C) Summary Judgment
         170AXVII(C)3 Proceedings
           170Ak2536 Affidavits
              170Ak2539 k. Sufficiency of Showing. Most Cited Cases
Co-workers' affidavits attesting to satisfactory manner in which claims representative performed her assignments at time of discharge were not sufficient to create genuine issue of material fact as to whether insurer's proffered reason for discharge, that rep-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

881 F.2d 309, 50 Fair Empl.Prac.Cas. (BNA) 601, 51 Empl. Prac. Dec. P 39,208
**(Cite as: 881 F.2d 309)**

resentative was unqualified for her position, was merely pretextual, in age **discrimination** action, where none of the co-workers were assigned in same department or work area as representative and had never been in position to observe or evaluate her job performance. Age **Discrimination** in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.; Ohio R.C. § 4101.17 et seq.

**[7] Labor and Employment 231H ⟲40(1)**

231H Labor and Employment
   231HI In General
      231Hk37 Term, Duration, and Termination
         231Hk40 Definite or Indefinite Term; Employment At-Will
            231Hk40(1) k. In General. Most Cited Cases
   (Formerly 255k20 Master and Servant)
Under Ohio law, absent specific contract defining period of employment, employment is at will.

**[8] Labor and Employment 231H ⟲51**

231H Labor and Employment
   231HI In General
      231Hk49 Manuals, Handbooks, and Policy Statements
         231Hk51 k. Particular Cases. Most Cited Cases
   (Formerly 255k4 Master and Servant)
Employee handbook section providing 15 specific situations that might warrant immediate discharge without warning did not create implied contractual provision of employment under Ohio law that was breached by terminating claims representative of insurer for poor performance.

**[9] Damages 115 ⟲57.55**

115 Damages
   115III Grounds and Subjects of Compensatory Damages
      115III(A) Direct or Remote, Contingent, or Prospective Consequences or Losses
         115III(A)2 Mental Suffering and Emotional Distress
            115k57.50 Labor and Employment
               115k57.55 k. Sex and Gender. Most Cited Cases
   (Formerly 115k50.10, 115k49.10)
Terminated claims representative for insurer had failed to allege mental disturbance of sufficient severity to state cause of action under Ohio law for negligent or intentional infliction of emotional distress; representative alleged a number of crude and sexually suggestive comments were made by her immediate supervisor, but the only emotional distress which the representative allegedly suffered consisted of "sleepless nights," a feeling that she was "sort of withdrawn," and a generalized impression that she was "not the same person [she] was prior to [her] termination.".

**\*311** Larry R. Zingarelli (argued), Columbus, Ohio, for plaintiff-appellant.

Diane C. Reichwein, David A. Laing (argued), Porter, Wright, Morris & Arthur, Columbus, Ohio, for defendant-appellee.

Before MERRITT and KRUPANSKY, Circuit Judges, and HILLMAN, District Judge. [FN*]

> FN* The Honorable Douglas W. Hillman, Chief United States District Judge for the Western District of Michigan, sitting by designation.

KRUPANSKY, Circuit Judge.

Josephine Gagné (Gagné) has appealed from the decision of the United States District Court for the Southern District of Ohio, granting summary judgment in favor of the Northwestern National Life Insurance Company (Northwestern) in this action commenced by Gagné alleging that she was terminated from her employment with Northwestern because of her age in violation of the Age **Discrimination** in Employment Act, 29 U.S.C. § 621 *et seq.* and the Ohio Age **Discrimination** statute, Ohio

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

881 F.2d 309, 50 Fair Empl.Prac.Cas. (BNA) 601, 51 Empl. Prac. Dec. P 39,208
(Cite as: 881 F.2d 309)

Rev.Code Ann. § 4101.17, and additionally alleging pendent state law claims sounding in breach of an implied employment contract, tortious infliction of emotional distress, and common law defamation. The district court, after reviewing the pleadings, supporting affidavits, depositions and other documents filed by the parties, and after construing the evidence most favorably on behalf of the appellant and having found no conflict of material fact, concluded that the defendant was entitled to summary judgment because appellant had failed to make a sufficient showing of essential elements of her case with respect to which she had the burden of proof.

A review of the record demonstrated the following underlying facts. The appellant had been employed by Northwestern, a property and casualty insurance company, in June 1978 at the age of forty-nine years to serve as a claims representative, which position required her to perform various duties, including promptly investigating, evaluating and settling first and third party insurance claims against the defendant or its policyholders, promptly and thoroughly determining any potential liability on the part of Northwestern as to such claims, promptly creating adequate reserves for potentially meritorious claims, promptly obtaining statements from parties and witnesses, timely completing monthly reports, and negotiating claims in a timely fashion. In 1981, Gagné was promoted to the position of senior claims representative, in which capacity she was assigned more complicated claims, including those involving serious bodily injury and extensive property damage.

From 1981 until her termination in 1984, Gagné was the only senior claims representative employed in the Columbus, Ohio branch of Northwestern. Beginning in January, 1983 and continuing until her termination in October, 1984, appellant's immediate supervisor was the Columbus branch Claims Manager, Ronald Thomann (Thomann). During 1983, Gagné received a series of verbal and written negative admonitions from Thomann concerning her work performance. Specifically, Gagné was given a written reprimand on July 21, 1983 after Thomann had learned that she had grossly underreserved a claim by more *312 than $100,000; a written reproach, dated October 19, 1983, in which the appellant was taken to task for having failed to properly investigate or provide a reserve for a serious bodily injury claim for more than two years after the claim had been filed; an oral warning on March 29, 1984 concerning her continued failure to investigate and set reserves for her claims, as well as for her disruptive and distractive office practice of consistently engaging other office employees in non-employment related conversations.

On June 5, 1984, Gagné received a critically negative written performance evaluation as part of a company wide annual evaluation, in which she was again admonished, both orally and in writing, concerning her inadequate work performance. The appellant was placed on probation on August 13, 1984 by Thomann as a result of her failure to improve her performance. She was terminated on October 15, 1984 for unsatisfactory work performance.

On September 29, 1986, Gagné commenced this action in the United States District Court for the Southern District of Ohio against Northwestern, [FN1] charging age **discrimination** under the federal Age **Discrimination** in Employment Act, 29 U.S.C. § 621 *et seq.* and the Ohio age **discrimination** statute, Ohio Rev.Code Ann. § 4101.17 *et seq.,* and pendent state law claims arising out of appellant's termination by Northwestern, asserting breach of contract for termination of an implied employment agreement, negligent and/or intentional infliction of emotional distress, and state law defamation.

> FN1. Gagné had also named Joel Peecock and Ronald Thomann, who were supervisors of Gagné in the Columbus, Ohio branch of Northwestern, as defendants in this action. The appellant later dismissed all claims against these two parties by stipulation filed with the district court, and they are not part of the instant appeal.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

881 F.2d 309, 50 Fair Empl.Prac.Cas. (BNA) 601, 51 Empl. Prac. Dec. P 39,208
**(Cite as: 881 F.2d 309)**

On July 7, 1988, the appellant dismissed the defamation claim by stipulation. On July 14, 1988, Northwestern filed a motion for summary judgment on all remaining claims. On September 6, 1988, the district court entered a Memorandum and Order and granted Northwestern's motion for summary judgment as to all of the appellant's remaining claims, and dismissed the action. The appellant timely filed an appeal from the district court's summary judgment ruling in favor of the defendant.

Initially, in this appellate review, Gagné has charged that the district court erred in granting summary judgment in favor of Northwestern on the federal age **discrimination** claim, arguing that there were conflicts of material fact presented which precluded the entry of summary judgment. The standard for determining whether summary judgment is appropriate in a particular case is set forth in Rule 56(c) of the Federal Rules of Civil Procedure.

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing of an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986); *Potters Medical Center v. City Hosp. Ass'n,* 800 F.2d 568, 572 (6th Cir.1986).

The Supreme Court has instructed that it is the plaintiff who bears the burden of proving a *prima facie* case of employment **discrimination** and additionally of rebutting any legitimate, nondiscriminatory explanation proffered by the employer for its actions.

> *313 First the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of **discrimination**. Second, if the plaintiff succeeds in proving a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for **discrimination**.

*Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (quoting *McDonnell Douglas Corp v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)) (emphasis added). "[T]he ultimate burden of proving that **discrimination** against a protected group has been caused by a specific employment practice remains with the plaintiff *at all times.* " *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, ----, 109 S.Ct. 2115, 2126, 104 L.Ed.2d 733 (1989) (quoting *Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, ----, 108 S.Ct. 2777, 2784, 101 L.Ed.2d 827 (1988) (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093)) (emphasis in original); *id.* 490 U.S. at ----, 109 S.Ct. at 2130 (Stevens, J., dissenting); *compare Price Waterhouse v. Hopkins,* 490 U.S. 228, ----, 109 S.Ct. 1775, 1788, 104 L.Ed.2d 268 (1989) ("[T]he plaintiff retains the burden of persuasion on the issue [of] whether [impermissible bias] played a part in the employment decision....") (Brennan, J., plurality opinion); *id.* at ----, 109 S.Ct. at 1796 (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093) (White, J., concurring); *id.* 490 U.S. at ----, 109 S.Ct. at 1801 ("We have indeed emphasized in the past that in an indi-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

881 F.2d 309, 50 Fair Empl.Prac.Cas. (BNA) 601, 51 Empl. Prac. Dec. P 39,208
**(Cite as: 881 F.2d 309)**

vidual disparate treatment action the plaintiff bears the burden of persuasion throughout the litigation.") (O'Connor, J., concurring); *id.* at ----, 109 S.Ct. at 1809 (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093) (Kennedy, J., dissenting).

[1][2] The elements of a *prima facie* case of age **discrimination** require that the charging party demonstrate that (1) she was a member of the protected class, i.e., that she was between the ages of 40 to 65 years of age; (2) that she was subjected to an adverse employment action; (3) that she was qualified for the particular position; and (4) that she was replaced by a person not a member of the protected class. *See, e.g., Chappell v. GTE Prods. Corp.,* 803 F.2d 261, 265-66 (6th Cir.1987), *cert. denied,* 480 U.S. 919, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987); *Wilkins v. Eaton Corp.,* 790 F.2d 515, 520 (6th Cir.1986); *compare Sewell v. Jefferson County Fiscal Court,* 863 F.2d 461, 466 (6th Cir.1988), *petition for cert. filed,* 57 U.S.L.W. 3843 (U.S. May 8, 1989) (No. 88-2037). In the case at bar, the appellant introduced sufficient evidence to prove that she was within the protected class, that she had been subjected to adverse employment action, and that she was replaced by a younger person. In response, Northwestern "clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection," *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094; namely, that Gagné was not qualified for her position in that her performance as a senior claims representative had been substandard for a period of approximately one year and that, in spite of numerous oral and written warnings to improve her performance, she had failed to show adequate improvement.

Because Northwestern introduced sufficient evidence to rebut the appellant's *prima facie* case of age **discrimination**, Gagné assumed "the burden of persuasion ... to demonstrate that the proffered reason was not the true reason for the employment decision." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. "[I]n disparate-treatment cases ... the plaintiff bears the burden of disproving an employer's assertion that the adverse employment action or practice was based solely on a legitimate neutral consideration." *Wards Cove Packing Co.,* 490 U.S. at ----, 109 S.Ct. at 2126; *compare Price Waterhouse,* 490 U.S. at ----, 109 S.Ct. at 1788 ("[E]ven after a plaintiff has made out a prima facie case of **discrimination**\*314 under Title VII, the burden of persuasion does not shift to the employer to show that its stated legitimate reason for the employment decision was the true reason.") (Brennan, J., plurality opinion); *id.* at ----, 109 S.Ct. at 1796 (agreeing with plurality) (White, J., concurring); *id.* at ----, 109 S.Ct. at 1801 ("In the face of this inferential proof, the employer's burden was deemed to be only one of production; the employer must articulate a legitimate reason for the adverse employment action.... The plaintiff must then be given an 'opportunity to demonstrate by competent evidence that the presumptively valid reasons for his rejection were in fact a coverup for a racially discriminatory decision.' ") (quoting *McDonnell Douglas,* 411 U.S. at 805, 93 S.Ct. at 1826) (O'Connor, J., concurring); *id.* 490 U.S. at ----, 109 S.Ct. at 1809 ("The employer must rebut the inference [of **discrimination**] by articulating a legitimate nondiscriminatory reason for its action. The final burden of persuasion, however, belongs to the plaintiff.") (Kennedy, J., dissenting); *see also Ford v. Nicks,* 866 F.2d 865, 870 (6th Cir.1989).

To meet this standard, Gagné was required to produce direct, indirect or circumstantial evidence that her age was a factor in the decision to terminate her and that "but for" this factor she would not have been terminated. *Chappell,* 803 F.2d at 265-66; *Wilkins,* 790 F.2d at 520; *Rose v. National Cash Register Corporation,* 703 F.2d 225 at 227 (6th Cir.1983); *cf. Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 282 n. 10, 96 S.Ct. 2574, 2580 n. 10, 49 L.Ed.2d 493 (1976).

[I]t is clear that merely making out a prima facie case does not automatically save appellant from a summary judgment motion. "Indeed, the infer-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

881 F.2d 309, 50 Fair Empl.Prac.Cas. (BNA) 601, 51 Empl. Prac. Dec. P 39,208
(Cite as: 881 F.2d 309)

ence of **discrimination** created by the prima facie case is dispelled once the employer's reason is stated, until and unless the latter is shown to be a pretext."

*Menard v. First Securities Serv. Corp.,* 848 F.2d 281, 287 (1st Cir.1988) (quoting *Dea v. Look,* 810 F.2d 12, 15-16 (1st Cir.1987) (quoting *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1015 (1st Cir.1979))). "Unless the plaintiff introduces counter-affidavits and argumentation that demonstrate that there is reason to disbelieve this particular explanation, there is no genuine issue of material fact." *Healy v. New York Life Ins. Co.,* 860 F.2d 1209, 1216 (3rd Cir.1988), *cert. denied,* 490 U.S. 1098, 109 S.Ct. 2449, 104 L.Ed.2d 1004 (1989); *accord Boddy v. Dean,* 821 F.2d 346, 348-49 (6th Cir.1987); *compare Steckl v. Motorola, Inc.,* 703 F.2d 392, 393-94 (9th Cir.1983).

[3] In the case at bar, the district court concluded that Gagné had failed to introduce any direct, indirect or circumstantial evidence to indicate that she had been terminated as a result of her age and, accordingly, failed to meet her burden of proof to withstand the appellee's motion for summary judgment on this count. The appellant has countered that she did present sufficient evidence to create a material factual issue as to whether her discharge was motivated by her age, relying upon a statement made by her immediate supervisor, Thomann, to the effect that he "needed younger blood."

This solitary remark, however, was insufficient to create an issue of material fact which would preclude entry of summary judgment in favor of the defendant. In her deposition testimony, the appellant herself characterized the comment at issue as an isolated remark uttered by her supervisor during a meeting attended by a number of employees, and indicated that the statement was made facetiously and was not directed at any particular individual. Case precedent clearly reflects that isolated and ambiguous statements, of the nature allegedly made by Thomann in the case at bar, "are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age **discrimination**." *Chappell,* 803 F.2d at 268 n. 2; *compare Barnes v. Southwest Forest Indus.,* 814 F.2d 607, 611 (11th Cir.1987); *La Montagne v. American Convenience Prods., Inc.,* 750 F.2d 1405, 1412 (7th Cir.1984); *Haskell v. Kaman Corp.,* 743 F.2d 113, 120 (2nd Cir.1984); *Smith v. Flax,* 618 F.2d 1062, 1066 (4th Cir.1980).

**\*315** [4] The appellant, directing this court's attention to her affidavit in opposition to the motion for summary judgment wherein she stated that Thomann had made the remark on several occasions, has urged this court to conclude that, contrary to the aforementioned case precedent, a conflict of material fact arose as a result of the controversial remark and it was for the jury or the fact finder to determine if it was merely an isolated incident or reflected company policy. However, in her deposition testimony, Gagné had previously testified that Thomann had made this statement only once. It is accepted precedent that "a party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts his earlier deposition testimony." *Reid v. Sears, Roebuck & Co.,* 790 F.2d 453, 460 (6th Cir.1986); *accord Biechele v. Cedar Point, Inc.,* 747 F.2d 209, 215 (6th Cir.1984) (quoting *Perma Research & Dev. Co. v. Singer Co.,* 410 F.2d 572, 578 (2nd Cir.1969)). Accordingly, the appellant is incorrect in suggesting that there remained a factual material issue in conflict before the district court as to the allegedly controversial incriminating comment.

[5] Alternatively, appellant's counsel has suggested during oral argument that the Supreme Court's recent decision in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), has altered the legal criteria applicable to certain employment **discrimination** actions by shifting the burden of proof to the employer to prove that the employment decision was not the result of impermissible discriminatory action, requiring that this matter be remanded to the district court for reconsideration pursuant to the newly announced stand-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

881 F.2d 309, 50 Fair Empl.Prac.Cas. (BNA) 601, 51 Empl. Prac. Dec. P 39,208
**(Cite as: 881 F.2d 309)**

ard. An examination of the *Price Waterhouse* decision demonstrates that the suggestion is misplaced. Contrary to the appellant's assertion, the decision enunciated in *Price Waterhouse* was not intended to overrule or modify the existing legal standard, expressed in *Burdine* and *McDonnell,* as the criteria ordinarily to be applied in employment **discrimination** cases. *See, e.g., Price Waterhouse,* 490 U.S. at ----, 109 S.Ct. at 1788 ("Our holding casts no shadow on *Burdine*....") (Brennan, J., plurality opinion); *id.* at ----, 109 S.Ct. at 1795-96 ("I agree with Justice Brennan that [the decision announced in *Price Waterhouse* ] ... is not a departure from and does not require modification of the Court's holding in *Texas Dep't of Community Affairs v. Burdine,* .. and *McDonnell Douglas Corp. v. Green*....") (White, J., concurring); *id.* at ----, 109 S.Ct. at 1796 ("The evidentiary rule the Court adopts today should be viewed as a supplement to the careful framework established by our unanimous decisions in *McDonnell Douglas Corp. v. Green* ... and *Texas Dep't of Community Affairs v. Burdine* ....") (O'Connor, J., concurring).

To the contrary, the *Price Waterhouse* Court specifically admonished that the new standard would apply *only* in the limited circumstances where the employee had produced *direct* evidence that the adverse employment decision at issue was the result of "mixed motives" on the part of the employer and that, although the employer acted in part because of legitimate nondiscriminatory justifications, an impermissible discriminatory animus was a *substantial* motivation for its action. *See, e.g., Price Waterhouse,* 490 U.S. at ----, 109 S.Ct. at 1795 ("[A]s Justice O'Connor states, [plaintiff's] burden was to show that the unlawful motive was a *substantial* factor in the adverse employment action.") (emphasis in original) (White, J., concurring); *id.* at ----, 109 S.Ct. at 1803-04 ("In my view, in order to justify shifting the burden on the issue of causation to the defendant, a disparate treatment plaintiff must show by direct evidence that an illegitimate criterion was a substantial factor in the decision.") (O'Connor, J., concurring); *id.* at ----, 109 S.Ct. at 1806 ("The shift in the burden of persuasion occurs only where a plaintiff proves by direct evidence that an unlawful motive was a substantial factor actually relied upon in making the decision.") (Kennedy, J., dissenting); *compare id.* at ----, 109 S.Ct. at 1789-92 (Brennan, J., plurality opinion). In such instances, the burden of *production* and *proof* to demonstrate that the adverse employment action was not the **\*316** product of impermissible discriminatory factors shifts from the employee to the employer. At the same time, however, the Court carefully noted that a mere isolated or ambiguous comment made by a supervisory official would be insufficient to shift the burden of proof to the employer as enunciated in the *Price Waterhouse* decision. *See, e.g., Price Waterhouse,* 490 U.S. at ----, 109 S.Ct. at 1791 ("Remarks at work that are based on sex stereotypes do not inevitably prove that gender played a part in a particular employment decision. The plaintiff must show that the employer actually relied on her gender in making its decision.") (Brennan, J., plurality opinion); *id.* at ----, 109 S.Ct. at 1804 ("Thus, **stray** remarks in the workplace ... cannot justify requiring the employer to prove that its hiring or promotion decisions were based on legitimate criteria.") (O'Connor, J., concurring); *id.* at ----, 109 S.Ct. at 1806 ("As the opinions make plain, the evidentiary scheme created today is not for every case in which a plaintiff produces evidence of **stray** remarks in the workplace.") (Kennedy, J., dissenting). Consequently, the single, isolated discriminatory comment alluded to by Gagné in the case at bar was clearly insufficient to invoke the application of the recently enunciated *Price Waterhouse* standard.

[6] The appellant has additionally argued that affidavits submitted by three co-workers, attesting to the satisfactory manner in which she had performed her assignments at the time of her discharge, were sufficient to create a genuine issue of material fact as to whether Northwestern's proffered reason for her discharge was merely pretextual. It was uncontested, however, that none of the three coworkers were assigned in the same department or work area

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

881 F.2d 309, 50 Fair Empl.Prac.Cas. (BNA) 601, 51 Empl. Prac. Dec. P 39,208
**(Cite as: 881 F.2d 309)**

as Gagné, and that they had never been in a position to observe or evaluate her job performance. As such, these individuals lacked the requisite personal knowledge or experience to testify as to the appellant's work proficiencies. *See, e.g., Menard,* 848 F.2d at 286-87; *Oliver v. Digital Equipment Corp.,* 846 F.2d 103, 107-08 (1st Cir.1988); *Loeb,* 600 F.2d at 1013; *compare Viterbo v. Dow Chem. Co.,* 826 F.2d 420, 424 (5th Cir.1987). Because the appellant failed to seriously challenge the nonpretextual explanation offered by Northwestern for her termination, other than by conclusory assertions that she was qualified and had performed in a satisfactory fashion, the district court correctly concluded that she had failed to make a sufficient showing of the essential elements of her rebuttal proof required for a claim under the federal age **discrimination** act. *See, e.g., Simpson v. Midland-Ross Corporation,* 823 F.2d 937 at 941 (6th Cir.1987) ("[M]ere conclusory allegations do not suffice to prove intentional **discrimination** based upon age."); *see also Jones v. Lewis,* 874 F.2d 1125, 1128 (6th Cir.1989) (per curiam) ("[F]actually unsupported allegations ... were insufficient to withstand a motion for summary judgment.").

[7][8] Alternatively, the appellant has argued that the district court erred in granting summary judgment in favor of Northwestern on her claim that the defendant had breached an implied contractual provision by terminating her for poor performance. It is uncontested that Gagné had no set term of employment with Northwestern. Under Ohio law, absent a specific contract defining a period of employment, the employment is at will.

> In the absence of facts and circumstances which indicate that the agreement is for a specific term, an employment contract ... is terminable at will by either party.

*Henkel v. Educational Research Council of Am.,* 45 Ohio St.2d 249, 249, 344 N.E.2d 118, 118 (1976) (syllabus); *compare Fawcett v. G.C. Murphy & Co.,* 46 Ohio St.2d 245, 249-50, 348 N.E.2d 144, 148-49 (1976); *Merkel v. Scovill,* 787 F.2d 174, 180 n. 3 (6th Cir.) (applying Ohio law), *cert. denied,* 479 U.S. 990, 107 S.Ct. 585, 93 L.Ed.2d 587 (1986). Ohio case precedent holds that an at will employee may be terminated at any time and for any reason. *Phung v. Waste Mgmt., Inc.,* 23 Ohio St.3d 100, 102, 491 N.E.2d 1114, 1116 (1986) ( "Ohio has long adhered to the general rule that 'either party to an oral employment relationship may terminate the employment relationship *317 for any reason which is not contrary to law.' ") (quoting *Mers v. Dispatch Printing Co.,* 19 Ohio St.3d 100, 103, 483 N.E.2d 150,153 (1985)).

The Ohio courts have, however, recognized that an otherwise at-will employment relationship may, under appropriate circumstances, be modified by promises or representations incorporated into, for example, employee handbooks. "Employee handbooks, company policy, and oral representations have been recognized in some situations as comprising components or evidence of the employment contract." *Mers,* 19 Ohio St.3d at 104, 483 N.E.2d at 154 (citations omitted). The appellant has charged that Northwestern included several statements in its employee handbook which permitted her to reasonably conclude that she would be terminated only for good cause, rather than at will. In particular, Gagné has relied upon that section of the employee handbook which provided that "sometimes it is necessary to terminate an employee without warning," and which detailed fifteen specific situations "which may warrant immediate discharge without warning." It is appellant's contention that since poor performance is not one of the fifteen examples enumerated in the handbook which would justify immediate discharge, it was improper to have terminated her for that reason.

The district court concluded that the appellant's argument was without merit. This court has rejected the above argument in *Reid v. Sears, Roebuck & Co.,* 790 F.2d 453 (6th Cir.1986).

> We do not believe that the listing of causes that "may result in the termination of your employ-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

881 F.2d 309, 50 Fair Empl.Prac.Cas. (BNA) 601, 51 Empl. Prac. Dec. P 39,208
**(Cite as: 881 F.2d 309)**

ment" in the Sears handbook detracted in any way from the language in the application or provided a reasonable basis for the conclusion that the plaintiffs were employed under a "for cause" contract. The fact that certain acts were identified as conduct that might lead to discharge did not indicate that these acts were the exclusive permissible grounds for discharge.

*Reid,* 790 F.2d at 460 (applying Michigan law); *see also Pratt v. Brown Machine Co.,* 855 F.2d 1225, 1233-34 (6th Cir.1988) (same). Additionally, it is axiomatic "that the judgment of a local district judge sitting in a diversity case, as to the application of state law, is entitled to considerable deference." *Diggs v. Pepsi-Cola Metropolitan Bottling Co.,* 861 F.2d 914, 927 (6th Cir.1988); *accord Agristor Leasing v. Saylor,* 803 F.2d 1401, 1407 (6th Cir.1986); *Martin v. Joseph Harris Co., Inc.,* 767 F.2d 296, 299 (6th Cir.1985); *cf. Molton v. City of Cleveland,* 839 F.2d 240, 250 (6th Cir.1988), *cert. denied,* 489 U.S. 1068, 109 S.Ct. 1345, 103 L.Ed.2d 814 (1989). Accordingly, because its interpretation of Ohio law was both reasonable and consistent with existing judicial interpretation, the district court did not err in granting summary judgment on the state contractual claim.

[9] Finally, Gagné has also pressed this court to conclude that the district court erred in dismissing her claim charging the defendant with intentionally or negligently inflicting emotional distress. The appellant anchored this count based upon a number of crude and sexually suggestive comments allegedly made by Thomann, her immediate supervisor. The Ohio courts have recognized a cause of action for negligent and/or intentional infliction of emotional distress, even absent some physical impact or injury, under circumstances where there is evidence of *serious* emotional trauma. *See, e.g., Reamsnyder v. Jaskolski,* 10 Ohio St.3d 150, 462 N.E.2d 392 (1984); *Yeager v. Local Union 20, Teamsters,* 6 Ohio St.3d 369, 453 N.E.2d 666 (1983); *Paugh v. Hanks,* 6 Ohio St.3d 72, 451 N.E.2d 759 (1983); *Schultz v. Barberton Glass Co.,* 4 Ohio St.3d 131,

447 N.E.2d 109 (1983). The Ohio Supreme Court has defined "serious" emotional distress in the following manner:

> Serious emotional distress describes emotional injury which is both severe and debilitating. Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case.

*Paugh,* 6 Ohio St.3d at 72, 451 N.E.2d at 761 (quoting syllabus). Conversely, the Ohio Supreme Court has expressly indicated*318 that "[t]he liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities ... [and that] [t]here is no occasion for the law to intervene in every case where someone's feelings are hurt." *Reamsnyder,* 10 Ohio St.3d at 153, 462 N.E.2d at 394 (quoting Magruder, *Mental and Emotional Disturbance in the Law of Torts,* 49 Harv.L.Rev. 1033, 1053 (1936)); *Yeager,* 6 Ohio St.3d at 375, 453 N.E.2d at 671 (same).

In delineating the standards to guide Ohio courts in reviewing cases seeking damages for the negligent infliction of serious emotional distress, we wish to underscore the element of " *seriousness* " as a *necessary component* required for a plaintiff-bystander in order to sufficiently state a claim for relief.... By the term "serious," we of course go *beyond trifling mental disturbance, mere upset or hurt feelings.* We believe that serious emotional distress describes emotional injury which is *both severe and debilitating.* Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case.

*Paugh,* 6 Ohio St. 3d at 78, 451 N.E.2d at 765 (emphasis added). This same standard has been applied to claims alleging intentional infliction of emotional distress. *Yeager,* 6 Ohio St.3d at 374, 453 N.E.2d at 671 ("Thus, we hold that in order to

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

881 F.2d 309, 50 Fair Empl.Prac.Cas. (BNA) 601, 51 Empl. Prac. Dec. P 39,208
**(Cite as: 881 F.2d 309)**

Page 11

state a claim alleging the intentional infliction of emotional distress, the emotional distress alleged *must* be *serious*.") (emphasis added).

In the case at bar, the only emotional distress which the appellant suffered consisted of "sleepless nights," a feeling that she was "sort of withdrawn," and a generalized impression that she was "not the same person [she] was prior to [her] termination." The appellant, however, never consulted either medical or psychological experts for assistance, and she never missed work during the time that these allegedly outrageous episodes had occurred. Accordingly, the district court correctly concluded that Gagné had failed to allege mental disturbance of sufficient severity to state a cause of action under Ohio law for either negligent or intentional infliction of emotional distress. *Accord Polk v. Yellow Freight System, Inc.,* 801 F.2d 190, 196-97 (6th Cir.1986) (quoting Restatement (Second) of Torts § 46, comment j (1965)); *see also Studstill v. Borg Warner Leasing,* 806 F.2d 1005 (11th Cir.1986); *Davis v. United States Steel Corp.,* 779 F.2d 209 (4th Cir.1985).

For the foregoing reasons, the district court's grant of summary judgment in favor of Northwestern is AFFIRMED.

C.A.6 (Ohio),1989.
Gagne v. Northwestern Nat. Ins. Co.
881 F.2d 309, 50 Fair Empl.Prac.Cas. (BNA) 601, 51 Empl. Prac. Dec. P 39,208

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.