Westlaw

Page 1

Not Reported in N.W.2d, 2009 WL 4348834 (Mich.App.)
(Cite as: 2009 WL 4348834 (Mich.App.))

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

UNPUBLISHED

Court of Appeals of Michigan.
Pamela SMITH, Plaintiff-Appellant,
v.
MICHIGAN DEPARTMENT OF CORRECTIONS, and Marie I. Fletcher, and Maxine Collard, Defendants-Appellees.
Docket No. 284744.

Dec. 1, 2009.

West KeySummary
Pretrial Procedure 307A 44.1

307A Pretrial Procedure
    307AII Depositions and Discovery
        307AII(A) Discovery in General
            307Ak44 Failure to Disclose; Sanctions
                307Ak44.1 k. In General. Most Cited Cases
The employee failed to show that the trial court erred in refusing to sanction the employer for discovery violations in her race discrimination claims. The employee claimed that she sought discovery relating to evidence of five events of alleged discrimination that her employer failed to provide. However, the employee failed to provide specificity in regard to the discovery she sought, and some of the discovery she requested was already in her possession. MCR 2.313(B)(2)(c), 2.310, 2.310(C)(1).

LC No. 05-004524-CZ.

Before: METER, C.J., and MURPHY, C.J., and ZAHRA, J.

PER CURIAM.

*1 In this employment discrimination case,[FN1] plaintiff appeals as of right a March 3, 2008 order granting defendants summary disposition. Plaintiff also challenges the trial court's decision denying plaintiff's motion to default defendants for alleged discovery violations. We affirm.

    FN1. Plaintiff also filed an action with the court of claims. This action was later dismissed with prejudice by the parties' stipulation.

I. Basic Facts and Proceedings

Plaintiff was employed by the State of Michigan, Department of Corrections (DOC), as a registered nurse from September 2003 to July 2005. She worked at Duane Waters Hospital (hospital), located in Jackson, which provides medical care to prisoners. On December 19, 2003, plaintiff got into a heated dispute with her supervisor, Teri Rogers (Rogers), over the preferential treatment of African American nurses. Plaintiff claims defendants continued retaliating against plaintiff for raising the issue of preferential treatment of African American nurses until she was suspended on January 25, 2005. On that date, plaintiff was suspended with pay pending an investigation into three allegations of incompetent nursing care. The investigation concluded on May 16, 2005, resulting in a finding that two of the three allegations were supported by substantial evidence. On June 21, 2005 a disciplinary board imposed upon plaintiff a five-day suspension to be served July 10-15, 2005. On July 26, 2005, plaintiff took an approved psychological leave of absence for 30 days. She was called to return to work, but refused claiming she was afraid to return. Plaintiff's employment was terminated on November 27, 2005.

Plaintiff had initially filed a complaint on April 25, 2005 alleging that the DOC, Marie Fletcher (Fletcher), the hospital supervisor, and "Does 1-10"

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 2:09-cv-11614-SFC-MJH  ECF No. 18-7, PageID.319  Filed 04/09/10  Page 2 of 6  Page 3 of 8
EXHIBIT W to DEF's MSJ
Page 2

Not Reported in N.W.2d, 2009 WL 4348834 (Mich.App.)
**(Cite as: 2009 WL 4348834 (Mich.App.))**

violated the Whistleblower Protection Act, MCL 15.361 et seq. Neither discrimination nor race was mentioned. Plaintiff alleged that she had reported that other nurses in the hospital had forged signatures (including plaintiff's) and falsified entries on patient medical records. Plaintiff claimed that after reporting the conduct on January 25, 2005 she was escorted from the hospital and suspended. Plaintiff also alleged that on January 6, 2005 she became aware of several cross-contamination concerns, including reuse of cracked vinyl pillows by prisoners without disinfection and filthy ventilation shafts. She claimed to have reported these concerns on January 23, 2005, but as noted, was escorted from the hospital and suspended with pay on January 25, 2005.

Defendants responded, filing a motion for summary disposition arguing that plaintiff was not an "employee" under the WPA because she was a state classified civil service employee, MCL 15.361, subject to the plenary authority of the State Service Commission. Plaintiff agreed with defendant and sought leave to amend her complaint to include a claim under the Elliot-Larsen Civil Rights Act (ELCRA), MCL 37.2101, et seq.

Plaintiff's proposed amended complaint alleged that from December 2003 to July 26, 2005, Fletcher, who is African American, intentionally discriminated against plaintiff, who is Caucasian, on the basis of race, by giving preferential treatment to African American nurses and Fletcher and retaliating against plaintiff because of her complaints of preferential treatment. The amended complaint highlights five instances of alleged racial discrimination that plaintiff refers to as "focal events," discussed *infra*.

*2 On January 11, 2008, the parties filed cross motions for summary disposition. Defendants' motion was comprehensive, essentially arguing that plaintiff had failed to establish any element of an ELCRA retaliation claim. Plaintiff's motion claimed that she had presented evidence through deposition testimony that conclusively established that the five focal events occurred. Plaintiff claimed that defendants have not disputed that the five focal events occurred, and therefore, plaintiff is entitled to summary disposition.

Before the hearing on the parties' motions for summary disposition, plaintiff filed a "[ *Traxler v. Ford Motor Co.,* 227 Mich.App. 276, 576 N.W.2d 398 (1998) ] motion to sanction," requesting that defendants be defaulted for discovery abuse. In the motion, plaintiff alleged that she had requested "discovery documents on the focal events" over a year ago. Plaintiff argued she had moved to compel discovery of the focal events, defendants had agreed to provide such discovery and the court ordered compliance with plaintiff's requests for the discovery. Plaintiff maintained that defendants did not produce any documents related to the focal events. In support, plaintiff claimed that defendants had admitted to possessing information in regard to a specific grievance case number but had not produced anything to plaintiff that contained the grievance case number.

The trial court conducted a hearing entertaining the parties' motions for summary disposition and plaintiff's *Traxler* motion. In a written order, the court addressed plaintiff's five focal events of alleged discrimination. The court first addressed the December 19, 2003 event in which plaintiff complained to Rogers about alleged preferential treatment given African American nurses. The court noted that plaintiff had filed an EEOC claim against Rogers based on the event, which was dismissed for failure to show discriminatory conduct or harassment. The court found that plaintiff's EEOC complaint did not allege activity in violation of the ELCRA, that plaintiff did not suffer adverse employment action and that Fletcher had no knowledge of plaintiff's complaints to retaliate against plaintiff.

The trial court also rejected plaintiff's claim that her reassignment was retaliatory because there was no evidence presented that she was engaged in protected activity. The court also concluded that there was no evidence presented that the assignment was

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 2:09-cv-11614-SFC-MJH ECF No. 18-7, PageID.320 Filed 04/09/10 Page 3 of 6

Page 4 of 8

EXHIBIT W to DEF's MSJ

Page 3

Not Reported in N.W.2d, 2009 WL 4348834 (Mich.App.)
(Cite as: 2009 WL 4348834 (Mich.App.))

materially adverse.

The trial court rejected plaintiff's claim that Fletcher retaliated against her by interfering with the grievance filed by Wilkins against plaintiff. The court found that Fletcher did not interfere with the grievance but followed the policy of the DOC.

In regard to Fletcher's allegedly hostile comments toward plaintiff at the OSE meeting, the trial court found that disputes regarding overtime were not protected activity under the ELCRA and that plaintiff suffered no adverse action.

Last, the trial court accepted defendants' argument that plaintiff failed to prove Fletcher retaliated against plaintiff because plaintiff represented Lee Sherman at a grievance hearing. Accordingly, the court accepted that there was no evidence that plaintiff wrote a grievance response for Sherman, and there was no evidence that Fletcher knew that plaintiff had written a grievance response. Further, the court noted that plaintiff was not adversely affected by receiving notice of a disciplinary hearing.

*3 The trial court concluded that "[p]laintiff, as with all of her assertions, failed to present clear and admissible evidence to support her claims against the [defendants.] The court then noted that,

> "[p]laintiff, in her oral arguments, admitted such lack of evidence directly to the Court. In making these admissions, the [p]laintiff in good-faith asserted that [d]efendants were not being forthright with the [p]laintiff's discovery requests. Thus, [p]laintiff requests the Court to fill in the lack of evidence in her pleadings and grant her Motion for Summary Disposition.

The trial court addressed the allegations that defendants were not providing her with discoverable evidence possessed by defendants. The court noted that defendants represented to the court that they had complied with all discovery requests, and the court accepted defendants' representations.

Plaintiff filed a motion for reconsideration on March 17, 2008, which the trial court denied on March 19, 2008, finding the motion merely presented the same issues ruled on by the court.

II. Discovery Abuse

A. Standard of Review

This Court reviews a trial court's imposition of discovery sanctions pursuant to MCR 2.313(B)(2)(c) for an abuse of discretion. *Traxler supra,* at 286, 576 N.W.2d 398. An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes. *Barnett v. Hidalgo,* 478 Mich. 151, 158, 732 N.W.2d 472 (2007).

B. Analysis

Plaintiff argues that the trial court erred in refusing to render judgment by default against defendants for failing to obey an order to provide discovery. We disagree.

MCR 2.313(B)(2)(c) authorizes a trial court to "enter an order dismissing a proceeding or rendering a judgment by default against a party who fails to obey an order to provide discovery." *Kalamazoo Oil Co. v. Boerman,* 242 Mich.App. 75, 86, 618 N.W.2d 66 (2000). Such a drastic sanction requires the trial court's careful consideration of the circumstances of the case. *Id.* The failure to facilitate discovery must not be accidental or involuntary. *Id.* Instead, the failure should be flagrant and wanton. *Id.* To determine the appropriate sanction, trial courts should consider the following factors:

> (1) Whether the violation was wil[l]ful or accidental; (2) the party's history of refusing to comply with discovery requests (or refusal to disclose witnesses); (3) the prejudice to the [other party]; (4) actual notice to the [other party] of the witness and the length of time prior to trial that the [other party] received such actual notice; (5)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 2:09-cv-11614-SFC-MJH ECF No. 18-7, PageID.321 Filed 04/09/10 Page 4 of 6

Page 5 of 8

EXHIBIT W to DEF's MSJ

Page 4

Not Reported in N.W.2d, 2009 WL 4348834 (Mich.App.)
(Cite as: 2009 WL 4348834 (Mich.App.))

whether there exists a history of [the party's] engaging in deliberate delay; (6) the degree of compliance by the [party] with other provisions of the court's order; (7) an attempt by the [party] to timely cure the defect, and (8) whether a lesser sanction would better serve the interests of justice. [Bass v. Combs, 238 Mich.App. 16, 26, 604 N.W.2d 727 (1999), overruled in part on other grounds Dimmitt & Owen Financial, Inc. v. Deloitte & Touche (ISC), LLC, 481 Mich. 618, 628, 752 N.W.2d 37 (2008).]

*4 Because the discovery plaintiff sought was allegedly documents held by defendants, MCR 2.310 controls. According to MCR 2.310(C)(1), a request for production of documents "must list the items to be inspected, either by individual item or by category, and describe each item and category with reasonable particularity." Here, we conclude plaintiff has failed to provide specificity in regard to the discovery sought. Simply insisting that a defendant possesses evidence relating to five events of alleged discrimination does not provide a reasonably particular description of each item and category sought.

Further, the only evidence that plaintiff reasonably identified was a document that contained a grievance number to a specific case (union document). In an interrogatory plaintiff requested that defendants admit "plaintiff, a white union steward, represented Less Sherman, at a third step grievance for reverse race discrimination." Defendant responded to the interrogatory admitting that, "all documentation presently in possession of the defendants establishes that only Lee Sherman was a party to the grievance assigned case number UAW 27-0015-04."

Based on defendants' response, plaintiff argued that defendants cannot cite to a document, which contains a "grievance assigned case number UAW 27-0015-04," while plaintiff had not received the union document from defendants. Defendants maintained their response to plaintiff's interrogatory "was based upon information contained in a one-page document that [plaintiff] produced to the defendants." Defendants noted that in support, plaintiff admitted at a motion hearing that, "We know they exist because we gave them the documents we had that my client got on some of these things. Those were provided to them. We got nothing back, not even those documents."

Defense counsel then responded,

if you gave me documents as a part of my discovery request, I didn't send it back unless I thought it would be responsive to that specific document request, presuming of course the whole underlying purpose of discovery is to get information that one doesn't have. If you already have it and you've given it to me, I can only presume that you're aware it exists and that it's responsive or not responsive to a request.

As mentioned, plaintiff requested that defendants admit that "plaintiff, a white union steward, represented Less Sherman, at a third step grievance for reverse race discrimination." However, the union document upon which defendants relied to respond to the interrogatory did not indicate that plaintiff represented Sherman at the grievance hearing. Thus, defense counsel was not unresponsive to plaintiff's discovery request. Further, defendant was already in possession of the document and thus failed to show prejudice.

Plaintiff also claims that defendants' responses to plaintiff's interrogatories were unintelligible. However, plaintiff fails to argue which, if any, of defendants' interrogatories answers was unresponsive. To properly present an appeal, an appellant must appropriately argue the merits of the issues he identifies in his statement of the questions involved. DeGeorge v. Warheit, 276 Mich.App. 587, 596, 741 N.W.2d 384 (2007). In any event, plaintiff claims that defendants "did not answer Plaintiff's Admissions or Interrogatories; they boilerplate objected, "played word games" and reformulated the questions, subdividing them into minutia until they were utter gibberish." However, our review of the inter-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 2:09-cv-11614-SFC-MJH ECF No. 18-7, PageID.322 Filed 04/09/10 Page 5 of 6

Page 6 of 8

EXHIBIT W to DEF's MSJ

Page 5

Not Reported in N.W.2d, 2009 WL 4348834 (Mich.App.)
**(Cite as: 2009 WL 4348834 (Mich.App.))**

rogatories and requests for admission finds them fairly responsive to questions posed. Therefore, plaintiff has failed to show that the trial court erred in refusing to sanction defendants for discovery violations.

### III. Summary Disposition

#### A. Standard of Review

**\*5** A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Corley v. Detroit Bd. of Ed.,* 470 Mich. 274, 278, 681 N.W.2d 342 (2004). In deciding the motion, a court must consider the pleadings, affidavits, depositions, admissions and other documentary evidence submitted in the light most favorable to the nonmoving party. *Id.* Summary disposition of all or part of a claim or defense may be granted when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10).

#### B. Analysis

Plaintiff argues that the trial court erred in granting defendants summary disposition. We disagree.

The ELCRA prohibits an employer from retaliating against an employee for making a charge, filing a complaint, testifying, assisting, or participating in an investigation, proceeding or hearing under the act. MCL 37.2701(a); *Feick v. Monroe County,* 229 Mich.App. 335, 344, 582 N.W.2d 207 (1998). To establish a prima facie case of retaliation under the ELCRA, a plaintiff must establish that "(1) that he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *DeFlaviis v. Lord & Taylor Inc.,* 223 Mich.App. 432, 436, 566 N.W.2d 661 (1997).

The first focal event, which plaintiff claims is her strongest, is that she was retaliated against for complaining to Rogers that Angela Union, a nurse, received preferential treatment because she was African American.

To be actionable, an employment action must be materially adverse to the employee-that is, it must be more than a mere inconvenience or minor alteration of job responsibilities. *Chen v. Wayne State University,* 284 Mich.App. 172, 201, 771 N.W.2d 820 (2009), citing *Meyer v. City of Centerline,* 242 Mich.App. 560, 569, 619 N.W.2d 182 (2000). There must also be an objective basis for demonstrating that the employment action is adverse because a plaintiff's subjective impressions are not controlling. *Id.* at 201-202, 619 N.W.2d 182, citing *Wilcoxon v. Minnesota Mining & Mfg. Co.,* 235 Mich.App. 347, 364, 597 N.W.2d 250 (1999). "Materially adverse employment actions are akin to termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.* at 202, 597 N.W.2d 250 (Internal quotations omitted).

Here, after the incident, Rogers sent plaintiff home and later issued plaintiff a counseling memorandum. Even assuming that plaintiff received the counseling memorandum for complaining about disparate treatment, as opposed to insubordination or her use of profanity, plaintiff presented no evidence to establish that being issued a counseling memorandum is a employment action materially adverse to her employment. The record reflects plaintiff was placed on administrative paid leave while at home, her duties remained the same, and there is no evidence of lasting affect upon plaintiff's employment. Regardless of plaintiff's belief that receiving a counseling memorandum is "in her file," plaintiff has not objectively shown how the counseling memorandum would affect her employment.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 6

Not Reported in N.W.2d, 2009 WL 4348834 (Mich.App.)
(Cite as: 2009 WL 4348834 (Mich.App.))

Under the facts presented in this case, receiving a counseling memorandum did not materially affect plaintiff's employment under the ELCRA.

*6 Similarly, plaintiff's claim that Fletcher acted in a hostile manner toward her at a union meeting did not result in any claimed adverse action. In plaintiff's brief on appeal, p. 11, she claims she suffered "immediate and public hostility from Fletcher." Again, even assuming plaintiff was hurt by Fletcher's comments, there is no evidence that the comments materially affected a condition of her employment.

At summary disposition and on appeal, plaintiff claims that she was retaliated against after sending two e-mails to nursing supervisors in regard to nurse Zo Robinson's poor treatment of Caucasian staff and nurses. Notably, the second amended complaint does not mention this as a focal event, instead citing plaintiff's transfer to an unfavorable floor and Union's promotion. Plaintiff now claims that after she sent the two e-mails, she was adversely re-assigned, Union was promoted and Wilkins was forced to file a grievance against plaintiff for inappropriate language even though Wilkins wanted to withdraw the grievance.

The first e-mail, dated April 20, 2004, refers to only to Robinson's "undermining behavior." The second e-mail, dated April 24, 2004, refers to race stating, "[Robinson] then told Monika this patient did not like black people taking care of him when white people were on staff. This patient is completely expressive aphasic and obviously could not tell his wishes, but when I asked him of this he nodded his head no-that he had not conveyed this." The e-mail also indicated that plaintiff was "getting numerous complaints of rude behavior from [Robinson].

Even assuming that plaintiff showed that she was engaged in protected activity, there is no evidence that this event caused Robinson and others to force Wilkins to file a grievance against plaintiff for using inappropriate language toward Wilkins. Plaintiff claims that the retaliation is clear because Wilkins filed the grievance on the same day she "reported" Robinson's behavior. However, the grievance was filed on April 20, 2004, and the e-mail plaintiff sent on that date did not at any point mention race. Accordingly, plaintiff has failed to show a causal basis to establish a claim under the ELCRA.

Plaintiff also claims she was retaliated against for writing a grievance on behalf of Sherman. Plaintiff claims she represented Sherman at a hearing and was disciplined for the Wilkins grievance immediately after the hearing. However, there is no evidence that these occurrences are related, and plaintiff "must show something more than merely a coincidence in time between protected activity and adverse employment action." *Garg v. Macomb Co. Community Mental Health Services,* 472 Mich. 263, 286, 696 N.W.2d 646 (2005). Thus, plaintiff failed to establish a retaliation claim under the ELCRA.

Last, we conclude plaintiff's claims of retaliation based on her reporting **forgery** and falsification of medical record do not implicate protected activity. MCL 37.2102(1) provides that:

> *7 The opportunity to obtain employment, housing and other real estate, and the full and equal utilization of public accommodations, public service, and educational facilities without discrimination because of religion, race, color, national origin, age, sex, height, weight, familial status, or marital status as prohibited by this act, is recognized and declared to be a civil right.

In short, plaintiff's alleged reporting of **forgery** and falsification of medical records does not implicate any recognized and declared civil rights. Accordingly, plaintiff has failed to show that she "opposed a violation of [the ELCRA]." MCL 37.2101(a). The trial court properly granted defendants summary disposition pursuant to MCR 2.116(C)(10).

We affirm.

Mich.App.,2009.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.