UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REGINALD WORTHY,

    Plaintiff,

v.

MICHIGAN BELL TELEPHONE CO.
d/b/a AT&T MICHIGAN,

    Defendant.
_____/

Case No. 09-11614

HON. SEAN F. COX
United States District Judge

## OPINION & ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Doc. No. 18]

Plaintiff Reginald Worthy ("Worthy") filed this employment discrimination claim on November 13, 2008 against Defendant Michigan Bell Telephone Co. d/b/a AT&T Michigan ("AT&T") in the Wayne County, Michigan Circuit Court. AT&T removed the matter on April 29, 2009 [*See* Doc. No. 1]. The matter is currently before the Court on AT&T's Motion for Summary Judgment [Doc. No. 18]. The parties have fully briefed the issues, and the Court declined to hear oral argument pursuant to E.D. MICH. L.R. 7.1(f)(2). For the reasons that follow, the Court **GRANTS** AT&T's Motion [Doc. No. 18].

### BACKGROUND

Consistent with the requirements of FED. R. CIV. P. 56, the following are the relevant facts of this matter, taken in the light most favorable to the non-moving party, Mr. Worthy

Worthy, an African-American male, began working at AT&T in 1993. [Worthy Dep., Def.'s Ex. S, Doc. No. 17, p.91]. During his employment, Worthy was a service technician for AT&T, and was a bargaining unit employee of the CWA, Local 4100. *Id*. at 28, 96.

1

On several occasions, Worthy acknowledged that he received AT&T manuals on job responsibilities and codes of conduct - such as the AT&T "Code of Business Conduct" [Def.'s Ex. B, Doc. No. 17] and the AT&T "Technician Expectations" [Def.'s Ex. C, Doc. No. 17]. During his deposition, Mr. Worthy admitted that he knew the "Technician Expectations" included requirements that technicians arrive at their first job within fifteen minutes of shift start time, that they should be ready to work at that time, and that they should remain at their assigned locations unless they were on break, lunch, or conducting work-related functions in a different area. [Worthy Dep., pp.107-08].

Worthy was the subject of numerous disciplinary actions during his employment with AT&T. Specifically, Worthy was written up in 1996 when his supervisor indicated that Worthy was not on the job, could not be located, and that the customer said Worthy had been gone for at least an hour. [*See* Def.'s Ex. D, Doc. No. 17]. Worthy was also written up by another supervisor in 2000 for insubordination, stating that Worthy had refused to perform his assigned tasks. [*See* Def.'s Ex. E, Doc. No. 17].[1]

In the summer of 2005, Worthy began reporting to Michael Lustig ("Lustig"), AT&T's Network Manager, who had supervisory authority over the air pressure group for AT&T. [Worthy Dep., p.97; Lustig Aff., Def.'s Ex. F, Doc. No. 17, ¶6]. In the 2005-2008 time frame, Lustig, who was white, supervised approximately seventeen employees. Of those seventeen employees, twelve - including Worthy - worked out of the Linwood Garage in Detroit, Michigan. Approximately eighty percent of the Linwood Garage employees were African-American. [*See*

---

[1] Worthy acknowledged that both of these supervisors were African-American. [Worthy Dep., pp.97-99].

Lustig Aff., ¶¶4-5].

As a service technician, Worthy's primary job responsibility was to check and repair air pressure leaks around the Detroit area in order to keep AT&T's telephone services running. *Id*. at ¶7. Worthy's overall job rating for the year 2006 was "below expectations," largely due to his documented issues of insubordination during that time. [Def.'s Ex. G, Doc. No. 17, p.4]. He was twice disciplined - in September of 2006 and again in January of 2007 - for sleeping on the job. [*See* Def.'s Ex. H, Doc. No. 17]. Further, on August 13, 2007, Worthy received a 2.6 day disciplinary suspension - his third such for insubordination - when he refused to work with the repair group to which Lustig assigned him that day. [*See* Def.'s Ex. I, Doc. No. 17].

On February 14, 2008, Lustig assigned Worthy and his partner, Greg Coleman ("Coleman") to work on a manhole located at Pembroke Avenue and Livernois in Detroit. [Lustig Aff., Def.'s Ex. F, Doc. No. 17, ¶16]. Worthy and Coleman each drove separate trucks that day, and should have arrived at the job site approximately at 8:30 a.m. *Id*. at ¶17. When Lustig arrived at the site at 10:40 a.m. to check in on their progress - as he often did with his direct reports - Coleman was the only one at the site. *Id*. at ¶¶18-19. When asked, Coleman told Lustig that he did not know where Worthy was. *Id*. at ¶20. Lustig waited at the site until 11:11 a.m. that day, when Worthy finally arrived. *Id*. at ¶21.

In a written statement dated March 5, 2008, Worthy explained his absence from the site on February 14, 2008 as follows. Instead of reporting to the Pembroke/Livernois site as he was instructed to do that morning, Worthy went to the St. Martins/Livernois site. [*See* Def.'s Ex. K, Doc. No. 17; Worthy Dep., pp.210-12]. Worthy alleges that Coleman drove up in his truck looking for Worthy at 10:00 a.m., when Coleman found Worthy at the St. Martins/Livernois site

3

and told Worthy that he was supposed to be at Pembroke/Livernois. *Id*. At that time, instead of reporting to the correct job site, Worthy went to the Coney Island restaurant across the street to get something to eat, and then sat in his truck eating the food before reporting to the Pembroke/Livernois site. *Id*.

This explanation, however, is contradicted by Coleman, who stated that he never drove to St. Martins/Livernois that day, but instead tried calling Worthy numerous times on his cell phone. [*See* Def.'s Ex. L, Doc. No. 17]. Further, the GPS on Coleman's truck corroborates that the truck was stationary at the Pembroke/Livernois site from 9:12 a.m. until 1:13 p.m. that day. [*See* Def.'s Ex. M, Doc. No. 17].

Worthy's employment with AT&T was terminated on or about March 13, 2008 for violating AT&T's "Code of Business Conduct" and "Technician Expectation Work Rules" [Def.'s Ex. N, Doc. No. 17]. The decision to terminate Worthy was made by Lustig, his manager, Larry Ricci, and the AT&T Human Resources department. [*See* Def.'s Exs. F, O, Doc. No. 17]. Though Worthy's local union filed a grievance against AT&T related to his termination, the national union declined to pursue an appeal of the grievance - citing Worthy's own conflicting versions of what happened on February 14, 2008. [*See* Def.'s Exs. P, Q, Doc. No. 17].

Worthy filed this lawsuit against Lustig and AT&T in the Wayne County, Michigan, Circuit Court on November 13, 2008, alleging race discrimination and retaliatory discharge in violation of Michigan's Elliott Larsen Civil Rights Act ("ELCRA"), M.C.L. § 37.2101 *et seq*. On April 13, 2009, Worthy filed an amended complaint, alleging a cause of action against the CWA under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 *et seq*. Citing this

4

Court's federal question jurisdiction, the Defendants then removed the action to this Court on April 29, 2009. [*See* Doc. No. 1].

Since that time, the Court has dismissed the actions against all defendants except AT&T. On November 23, 2009, Worthy stipulated to the dismissal of his claims against Lustig due to Worthy's failure to adequately serve Lustig with process. [*See* Doc. No. 15]. Worthy's claims against the Union were also dismissed. [*See* Doc. No. 11]. Thus, the only remaining claims in this action are Worthy's race discrimination and retaliatory discharge claims against AT&T under the ELCRA.

In his deposition, Worthy stated that his race discrimination claim is based upon an interaction he had with Lustig on November 29, 2005 - more than two years prior to his discharge. At first, Worthy alleged that Lustig said "Boy, when I tell you to do something. . . ." [Worthy Dep., pp.10-11]. Later, Worthy changed his story and alleged the statement was really "Boy, bring your ass back here." *Id.* at 33. Regardless, Worthy himself stated in his deposition that he attributed the comment not to his race, but to Lustig not treating him like an adult. "That's when I told him don't - I'm a grown man, you know, don't call me boy, you know." *Id.*

Though Worthy claims that he filed a grievance against Lustig and against AT&T over this incident, neither Worthy nor the union can find a copy of the grievance Worthy claims he filed. AT&T management has no record of a grievance either, and Lustig denies that the comments were even made in the first place. [*See* Def.'s Ex. F, Doc. No. 17, ¶11].

Aside from this single, isolated incident, Worthy admits that Lustig did not make any further comments to him that Worthy perceived as racial in nature. [Worthy Dep., pp.73-73, 101, 161-62]. Worthy alleges, however, that Lustig treated the other African-American

5

employees better than he was treated - but at the same time contradicts this assertion in alleging that Lustig's treatment in general of him was indicative of a personal vendetta Lustig did not exhibit to other African-American employees. *Id*. at pp.76, 101, 156. Worthy further testified that no one at AT&T, other than Lustig, ever discriminated against him or retaliated against him. *Id*. at 100. AT&T filed its instant motion on April 9, 2010 [Doc. No. 18], seeking dismissal of Worthy's claims in their entirety. Worthy opposes AT&T's motion [*see* Pl.'s Br., Doc. No. 26].

## STANDARD OF REVIEW

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)).

## ANALYSIS

In his amended complaint [Doc. No. 1], Worthy alleges that AT&T discriminated against him because of his race, and terminated him in retaliation for his filing a union grievance regarding this alleged discrimination. AT&T argues that summary judgment on both of these

6

claims is proper, and the Court agrees.

    I. <u>Exhibits to Worthy's Brief in Opposition to AT&T's Motion</u>.

    A preliminary note. In opposing AT&T's motion for summary judgment, Worthy - through his counsel - relies upon several exhibits which purport to establish discriminatory intent in Lustig's dealings with the Worthy. Specifically, Worthy attaches the following exhibits to his motion [Doc. No. 26] relevant to this issue:

> Exhibit A - A "statement of facts" purportedly signed by Worthy, which is undated, unsworn, and not notarized;
> Exhibit C - A "statement of facts" purportedly signed by Worthy, dated February 18, 2008, which is unsworn and not notarized;
> Exhibit D - A writing purportedly signed by Greg Coleman, which is undated, unsworn, and not notarized;
> Exhibit F - A "statement of facts" purportedly signed by Worthy, which is undated, unsworn, and not notarized;
> Exhibit G - A "statement of facts" purportedly from Worthy, which is unsigned, undated, unsworn, and not notarized; and
> Exhibit H - A collection of five documents:
>> 1) A letter purportedly from "the union members of the Linwood Air Pressure crew," bearing nine unidentified signatures, dated January 4, 2008, which is unsworn and not notarized;
>> 2) A letter purportedly from Kenji Lemon, which is unsigned, undated, unsworn, and not notarized;
>> 3) A letter purportedly signed by Erick Adams, which is undated, unsworn, and not notarized;
>> 4) A letter purportedly signed by Oliver Boyd, which is undated, unsworn, and not notarized; and
>> 5) A letter purportedly signed by Tee-Huan Harvey, dated June 23, 2008, which is unsworn and not notarized.

Again, when considering the merits of a summary judgment motion, FED. R. CIV. P. 56(c) instructs federal courts to consider the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" brought forth by the parties or witnesses. An affidavit is:

> a voluntary declaration of facts written down and sworn to by the declarant before

7

an officer authorized to administer oaths, such as a notary public; a great deal of evidence is submitted by affidavit, especially in pretrial matters such as summary judgment motions.

BLACK'S LAW DICTIONARY (8th Ed., 2004). The ten documents described *supra*, offered by Worthy for the truth of their contents, are, at best, imperfect attempts at provided evidence by affidavit for the Court's consideration.

Sixth Circuit case law is clear that "unsigned affidavits do not comply with FED. R. CIV. P. 56(e)." *Nassif Ins. Agency, Inc. v. Civic Prop. & Cas. Co.*, 2005 WL 712578, *3 (6th Cir. Mar. 30, 2005); see also *Wright v. Asset Acceptance Corp.*, 2000 WL 33216031, *5 (S.D. Ohio Jan. 3, 2000) ("it is axiomatic that an 'affidavit' which is unsigned and not notarized cannot qualify as proper Rule 56 evidence"). In this case, none of the ten documents described *supra* are notorized - indeed, many of these documents are also unsigned, undated, or both.

While 28 U.S.C. § 1746 does allow for unsworn declarations to be considered by the Court under some circumstances, that statute does not assist Worthy here. "[U]nsworn declarations are permitted to be used as evidence," but "only if subscribed. . . as true under penalty of perjury *and dated*." *Bonds v. Cox*, 20 F.3d 697, 702 (6th Cir. 1994), quoting 28 U.S.C. § 1746 (emphasis in original). In this case, none of the documents described *supra* are attested to under the penalty of perjury - using either the language, or its equivalent, required in the statute. Further, many of the documents are also undated.

As the ten documents discussed *supra* are not proper affidavits, nor can they properly be considered unsworn declarations under 28 U.S.C. § 1746, the Court will disregard them as evidence for consideration in this motion.

II. <u>Worthy's Racial Discrimination Claim Under the ELCRA</u>.

8

In Count IV of his Amended Complaint [Doc. No. 1], Worthy alleges a cause of action against AT&T for race discrimination in violation of Michigan's Eliot Larsen Civil Rights Act ("ELCRA"), M.C.L. § 37.2101 *et seq*. In its motion, AT&T argues that Worthy's discrimination claim fails as a matter of law. [*See* Def.'s Br., Doc. No. 18, pp.3-8]. The Court agrees.

Worthy, an African-American male, brings his discrimination claim claim under Michigan's Elliott-Larsen Civil Rights Act, M.C.L. § 37.201 *et seq*. That statute provides, in relevant part:

> An employer shall not do any of the following:
> (a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because or religion, race, color, national origin, age, sex, height, weight, or marital status.

M.C.L. § 37.2202(1)(a).

Michigan courts "have used the prima facie test articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*[, 411 U.S. 792 (1973)] as a framework for evaluating [ELCRA] claims." *Town v. Mich. Bell Telephone Co.*, 455 Mich. 688, 695 (1997). First, the employee has the burden to bring forth a prima facie showing of discrimination. *Id*. If the plaintiff meets their prima facie burden, the burden of production shifts to the employer, who must proffer a legitimate, nondiscriminatory reason for the employee's discharge. *Id*. Upon satisfaction of the employer's burden of production, the burden shifts back to the employee, who:

> . . . must submit *admissible evidence* to prove that the employer's nondiscriminatory reason was not the true reason for the discharge and that the plaintiff's [protected status - here, race] was a motivating factor in the employer's decision. Thus, the employer must prove that the employer's explanation was a *pretext for discrimination*.

9

*Id*. at 697 (emphasis added).

In this case, AT&T argues that Worthy can not meet his burden to proffer a prima facie showing of discrimination, nor can he show that the legitimate, non-discriminatory reasons given by AT&T for his termination were pretextual. While the Court disagrees with the first of these arguments, Mr. Worthy still has not met his burden to show pretext. Summary judgment in AT&T's favor is therefore proper.

      A. <u>Mr. Worthy's Prima Facie Discrimination Claim</u>.

AT&T argues that Worthy is incapable of establishing a prima facie claim under the ELCRA. [*See* Def.'s Br., Doc. No. 18, p.3]. The Court disagrees.

To proffer a prima facie claim of race discrimination under the ELCRA, Worthy must establish: 1) that he was a member of a protected group - not disputed here; 2) that he was qualified for the job; 3) that he was subjected to an adverse employment action; and 4) that he was treated differently than similarly situated employees who were outside the protected group for the same or similar conduct. *See Hazle v. Ford Motor Co.*, 464 Mich 456, 467 (2001). The Michigan Court of Appeals, in *Mich. Civil Rights Comm'n ex rel Boyd v. Chrysler Corp.* elaborated upon this prima facie requirement as follows:

> [T]he prima facie showing of discrimination which [the plaintiff] is responsible for making is not merely presentation of enough evidence to avoid a directed verdict, as if this were a jury trial, but rather, presentation of enough evidence to entitle him to a judgment if a nondiscriminatory reason for the discharge is not shown.
>
> Second, all the evidence must be considered, there is no need to ignore opposing evidence to determine if [the plaintiff] has made a prima facie case. If the company can refute a claim of disparate treatment, it need not shoulder the burden of proving a valid non-discriminatory reason for the discharge.

*Boyd*, 80 Mich. App. 368, 375 (1977) (internal citations and quotations omitted). "Bare

assertion[s]" of discrimination are insufficient to satisfy a plaintiff's prima facie requirement. *Bouwman v. Chrysler Corp.*, 114 Mich. App. 670, 682 (1982). Further, a plaintiff's "subjective beliefs. . . are wholly insufficient to establish a claim of discrimination as a matter of law." *Mitchell v. Toledo Hospital*, 964 F.2d 577, 585 (6th Cir. 1992).

In this case, AT&T makes several arguments why it believes Worthy fails to meet the "qualified" element of his prima facie case. Citing *Bouwman v. Chrysler Corp.*, 114 Mich. App. 670, 679 (1982), AT&T argues that Worthy was not "performing his. . . job at a level which met his employer's legitimate expectations." [Def.'s Br., Doc. No. 18, p.5]. That standard discussed in *Bouwman*, however, relates to a requirement for a prima facie showing under the federal Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*., not the "qualified" element of an ELCRA claim.

The Sixth Circuit has recognized that "[c]ases bought pursuant to the ELCRA are analyzed under the same evidentiary framework utilized in Title VII [i.e., federal employment discrimination] cases." *Ford v. Securitas Sec. Services USA, Inc.*, 338 Fed. Appx. 483, 486 (6th Cir. July 14, 2009). Applying Title VII standards, the Sixth Circuit has also held that a plaintiff's burden to proffer a prima facie showing of discrimination "is not onerous, and poses a burden easily met." *Kiluk v. Med. Imaging Resources, Inc.*, 325 Fed. Appx. 413, 414 (6th Cir. Apr. 28, 2009) (internal citations and quotations omitted). Specific to the "qualified" prong of Title VII claims - and therefore also with respect to ELCRA claims, "we consider [the plaintiff's] qualifications, such as [his or her] education, experience in the relevant industry, and possession of the general skills required for this position." *Id*. Thus, under the ELCRA - and contrary to AT&T's arguments here - while Worthy's job performance *may* be relevant under an

ADEA claim, it is not relevant to his status as "qualified" for purposes of this action.

Similarly, AT&T's argument that Worthy did not suffer an adverse employment action is also without merit. [*See* Def.'s Br., Doc. No. 18, pp.5-6]. While AT&T is correct in arguing that "[w]rite-ups, criticism by a supervisor, and performance improvement plans" do not satisfy the requirement for an adverse employment action, *Id*., citing *Pena v. Ingham County Rd. Comm'n*, 255 Mich. App. 299, 312 (2003)], *Pena* also emphatically states that having one's employment terminated - as was the case with Worthy - *does* satisfy that requirement:

> Although there is no exhaustive list of adverse employment actions, typically it takes the form of an ultimate decision, *such as a termination in employment*, a demotion evidenced by a decrease in wage of salary, a less distinguished title, a material loss in benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Pena*, 255 Mich. App. at 312 (internal citations and quotations omitted) (emphasis added).

In this case, it is undisputed *that Worthy's employment with AT&T was terminated*, which he alleges was due, in part, to the discriminatory treatment he suffered at the hands of Mr. Lustig, his supervisor. Such is the very definition of an averse employment action.

AT&T also argues that the lack of temporal proximity between Lustig's alleged "boy" comment and Worthy's termination is relevant to his prima facie case. The Court disagrees. While temporal proximity is relevant to Worthy's *retaliation* claim, discussed *infra*, the cases cited by AT&T in their brief either relate to other state's discrimination statutes, or are otherwise not on point.

Again, the burden on plaintiffs to proffer a prima facie showing of discrimination is not onerous. Here, Worthy, an African-American male, alleges that he was qualified for his position as a service technician with AT&T, that he was terminated from that position, and that other,

12

non-minority employees were treated differently than he was by his supervisor. Nothing more is required of Worthy to set forth a prima facie case of discrimination.

B. Mr. Worthy's Failure to Show Pretext.

AT&T has offered a legitimate, non-discriminatory rationale for its decision to terminate Worthy's employment - i.e., that Worthy had a long history of insubordination and failure to complete assigned tasks, culminating in the events of February 14, 2008. In his brief in opposition to AT&T's motion [Doc. No. 26], Worthy makes no argument disputing AT&T's reasons for terminating him. The Court therefore holds that AT&T has met its required burden under the second *McDonnell-Douglas* prong.

Again, to successfully prove that AT&Ts explanation for his discharge was a pretext for racial discrimination, Worthy "must submit *admissible evidence* to prove that the employer's nondiscriminatory reason was not the true reason for the discharge and that the plaintiff's [protected status - in this case, race] was a motivating factor in the employer's decision." *Town v. Mich. Bell Telephone Co.*, 455 Mich. 688, 697 (1997).

Further, it is not enough for Worthy to simply raise a genuine issue of material fact regarding the pretextual nature of AT&T's proffered reasons. Instead, Worthy "must not merely raise a triable issue that the employer's proffered reason was pretextual, *but that it was a pretext for [race]. . . discrimination*." *Lytle v. Malady*, 458 Mich. 153, 176 (1998) (emphasis added). The *Lytle* Court elaborated as follows:

> [A] plaintiff must prove discrimination *with admissible evidence*, either direct or circumstantial, *sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor* for the adverse action taken by the employer toward the plaintiff.

*Id*. (emphasis added). Michigan courts recognize three separate avenues by which a plaintiff can

13

show pretext:

> A plaintiff can establish that a defendant's articulated legitimate, nondiscriminatory reasons are pretexts (1) by showing that the reasons have no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision.

*Feick v. County of Monroe*, 229 Mich. App. 335, 343 (1998).

In this case, Worthy has not come forward with evidence proving that AT&T's rationale for terminating him was pretextual. Though Worthy asserts that "Lustig was unreasonable in reprimanding the Plaintiff," and that AT&T "had no basis in fact" for doing so [*see* Pl.'s Br., Doc. No. 26, p.13], Worthy has come forward with no *admissible evidence* to support his assertions. This evidentiary deficiency is fatal to Worthy's claim for discrimination under the ELCRA, and the Court therefore **GRANTS** AT&T's motion for summary judgment on Count IV of Worthy's complaint.

### III. Worthy's Retaliation Claim Under the ELCRA.

In Count V of his Amended Complaint [Doc. No. 1], Worthy alleges a cause of action against AT&T for retaliation in violation of Michigan's Eliot Larsen Civil Rights Act ("ELCRA"), M.C.L. § 37.2101 *et seq.* In its motion, AT&T argues that Worthy's discrimination claim fails as a matter of law. [*See* Def.'s Br., Doc. No. 18, pp.8-11]. The Court agrees.

A prima facie case of unlawful retaliation under the ELCRA is established where a plaintiff: 1) engages in a protected activity; 2) that is known by the defendant; 3) suffers an adverse employment action, and 4) shows a causal connection between the protected activity and the adverse employment action. *See, e.g., Lee v. City of Detroit*, 2008 WL 5101950, *6 (Mich. App. Dec. 4, 2008); *Pena*, 255 Mich, App. at 311. In this case, though Worthy satisfies the third

14

of these requirements - i.e., that his employment with AT&T was terminated - Worthy has failed to establish any of the other three requirements.

In his brief in opposition to AT&T's motion [Doc. No. 26], Worthy alleges that he was retaliated against by Lustig - and therefore by AT&T - due to his filing a union grievance regarding Lustig's "boy" comment in 2005:

> Plaintiff testified that, following the incident where Mr. Lustig had called Plaintiff "boy," it was at that point that Mr. Lustig tried to be proactive and attempt to reprimand the Plaintiff, which Plaintiff did, in fact, file a grievance for that incident. Since then, Plaintiff's filing of a grievance in August of 2007 and also in November of 2005 led to a series of unjustified citations for wrongful misconduct on the job by Mr. Lustig. . . . *had Plaintiff not filed the grievance in November of 2005 for the statement that Mr. Lustig made referring to the Plaintiff as "boy," all of these subsequent unjustified accusations would lead one to believe that Mr. Lustig, by way of circumstantial evidence, terminated the Plaintiff.*

[Pl.'s Br., Doc. No. 26, p.13].

This argument is without merit for several reasons. First, and most importantly, besides Worthy's own self-serving assertion, there is *absolutely no evidence* to support his claim that he filed a union grievance regarding Lustig's alleged 2005 "boy" comment. Worthy's union has absolutely no record of any such grievance being filed with them, nor does AT&T. Without being able to prove that the "protected activity" Worthy alleges he was engaged in - i.e, the filing of a union grievance to protest his supervisor's allegedly racist comments - *ever actually happened*, Worthy cannot satisfy the first prong of a valid ELCRA retaliation claim. Further, if the grievance never happened, then logically Worthy also cannot satisfy the second prong of an ELCRA retaliation claim: that AT&T knew about the protected activity.

Finally, even assuming *arguendo* that a protected activity had been shown by Mr. Worthy, Worthy cannot satisfy the fourth and final requirement for a valid ELCRA retaliation

15

claim: a causal connection between the protected activity and the adverse employment action. Other than his own speculation that Lustig - and therefore AT&T - retaliated against him in response to his union grievance, Worthy has proffered no evidence suggesting a causal link between the supposed grievance and his termination.

Where an adverse employment action occurs very close in time after an employer learns that an employee has engaged in protected behavior, such temporal proximity may be sufficient to evidence a causal connection. *See, e.g., Clark County Sch. Dist. v. Breeden*, 532 U.S. 268 (2001). However, other circuits have held that, even after a relatively short period of time, lapses between a protected activity and the alleged retaliation have been held insufficient to evidence a causal connection. *See, e.g., LeBoon v. Lancaster Jewish Cmth. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) (three month lag insufficient to show causation); *O'Neal v. Ferguson*, 237 F.3d 1248, 1253 (10th Cir. 2001) (two months insufficient). Here, by contrast, Worthy's employment with AT&T was terminated on March 13, 2008 - *well over two years after* the alleged "boy" comment was made by Lustig. Temporal proximity alone is an insufficient basis for Worthy to allege causation. Worthy alleges no further argument in his brief in support of such a causal connection.

As Worthy has failed to make out a prima facie showing of retaliation under the ELCRA, the Court **GRANTS** AT&T's motion for summary judgment on Count V of Worthy's complaint.

## CONCLUSION

For the reasons explained above, the Court **GRANTS** AT&T's Motion [Doc. No. 18], and **DISMISSES** this case in its entirety.

**IT IS SO ORDERED.**

s/Sean F. Cox

Dated: July 21, 2010                                     SEAN F. COX
                                                         UNITED STATES DISTRICT JUDGE